767 So.2d 877 (2000)
Alicia WEST, Individually and on Behalf of Her Minor Daughter, Dellicia West, and Dawn Dixon, Individually and on Behalf of Her Minor Children, Lionel Dixon, Dustin Dixon, and Demarcus Dixon
v.
CLARENDON NATIONAL INSURANCE COMPANY.
No. 99 CA 1687.
Court of Appeal of Louisiana, First Circuit.
July 31, 2000.
*878 Matthew W. Bailey, O'Neal Walsh and Associates, Baton Rouge, for Defendant-Third Party Plaintiff-Appellant Clarendon National Insurance Company.
Keith M. Borne, Borne, Wilkes & Brady, L.L.P., Lafayette, for Third Party Defendant-Appellee Safeway Insurance Company.
Before: SHORTESS, C.J., PARRO, and KUHN, JJ.
PARRO, J.
Cancellation of an automobile liability insurance policy versus renewal of such a policy is the salient issue involved in this case. On cross motions for summary judgment, the trial court granted summary judgment in favor of the alleged tortfeasor's liability insurer and denied summary judgment to the victim's uninsured/underinsured liability insurer. The victim's insurer appeals. For the following reasons, the judgment of the trial court is reversed.

Factual and Procedural Background
On June 30, 1996, Karen Bourgeois (Bourgeois) and Alicia West (West) were involved in an automobile accident. Bourgeois was driving a 1988 Chevrolet Caprice that belonged to Thomas Bosley, Jr. (Bosley). As a result of this accident, West filed suit against Clarendon National Insurance Company (Clarendon), her uninsured motorists insurer. Along with its answer, Clarendon filed a third party demand against Bourgeois and Safeway Insurance Company (Safeway), as insurer of the Chevrolet Caprice driven by Bourgeois. Subsequently, Bosley was named as a defendant in the third party demand. Safeway filed an answer to the third party demand alleging that the policy of liability insurance that had been previously issued to Bosley had lapsed on June 18, 1996, at 12:01 a.m. due to nonpayment of premiums. Accordingly, it denied coverage.
Clarendon filed a motion for summary judgment on the issue of coverage, contending that Safeway's policy was in full force and effect on June 30, 1996, in light of Safeway's failure to comply with LSA-R.S. *879 22:636.1.[1] Safeway opposed the motion, urging that LSA-R.S. 22:636.1 was inapplicable and a notice of cancellation was unnecessary since the policy expired on its own terms. Following a hearing, the trial court denied Clarendon's motion for summary judgment. In light of the trial court's denial of Clarendon's motion, Safeway filed a motion for summary judgment contending there was no insurance coverage on the date of the accident (June 30, 1996) under the undisputed facts of this case. Clarendon responded by filing a second motion for summary judgment reurging its prior argument pertaining to coverage. After a hearing on these cross motions, the trial court signed a judgment granting Safeway's motion, denying Clarendon's motion, and dismissing Clarendon's third party claim against Safeway. From this judgment on the third party demand, Clarendon appeals.[2]

Summary judgment
An appellate court reviews a trial court's decision to grant a motion for summary judgment de novo, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. Smith v. Our Lady of the Lake Hospital, Inc., 93-2512 (La.7/5/94), 639 So.2d 730, 750. A motion for summary judgment is a procedural device used to avoid a full scale trial when there is no genuine factual dispute. Jarrell v. Carter, 632 So.2d 321, 323 (La.App. 1st Cir.1993), writ denied, 94-0700 (La.4/29/94), 637 So.2d 467. The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. LSA-C.C.P. art. 966(A)(2); Rambo v. Walker, 96-2538 (La. App. 1st Cir. 11/7/97), 704 So.2d 30, 32. The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B).

Coverage
On March 1, 1996, Bosley applied for and obtained a policy of automobile liability insurance with Safeway on his 1987 Chevrolet S10 pickup truck at a cost of $51 per month, together with a monthly processing fee of $6. This policy bore a number of 387237 for a term of March 1, 1996, to April 1, 1996. Bosley renewed this policy prior to its expiration to extend coverage through April 28, 1996. After April 28, 1996, policy number 387237 was reissued for the term of May 1, 1996, to June 1, 1996, because of a late premium payment. On May 15, 1996, prior to the expiration of that coverage period, Safeway sent a renewal premium notice to Bosley advising him that the policy was set to expire on June 1, 1996, unless a renewal premium payment in the amount of $57 was made by May 27, 1996.
However, on May 16, 1996, Bosley completed a general change endorsement request form to add a second vehicle (the Caprice) to his policy. The affidavit of Safeway's underwriting supervisor[3] reveals that at that time, Bosley made a premium payment for coverage through June 1, 1996, on the added vehicle. Thus, this affidavit supports a finding that the parties intended to maintain the policy on a calendar month basis. Accordingly, *880 Safeway accepted payment of $23 as the cost for adding the second vehicle for the period of May 16, 1996, through June 1, 1996.
Despite the subsequent endorsement adding a second vehicle, Bosley remitted only $57 to Safeway on May 31, 1996, relying on the May 15, 1996 renewal premium notice for one month's coverage solely on the Chevrolet S10 pickup truck. In light of the subsequent endorsement, this amount was obviously insufficient to prepay the premium owed for the month of June.[4] According to the affidavit of Safeway's underwriting supervisor, Bosley's $57 payment was sufficient to cover only the cost of insurance on both vehicles for part of the month of June, or until June 18.[5] Therefore, on June 4, 1996, Safeway sent a renewal premium notice to Bosley, which gave him the option of renewing his policy (number 387237) for one month for $98, two months for $190, or three months for $282. Although the June 4, 1996 "renewal premium" notice gave Bosley the option of making full payment of policy premiums for one, two, or three months of coverage, the affidavit of Safeway's underwriting supervisor suggested that the June 4, 1996 notice simply sought payment of the balance of the increased premium owed under the policy due to the addition of the second vehicle.[6] The payment of such balance for the first month was necessary to cover the premium cost for the intended policy term, that is, June 1, 1996, to July 1, 1996.
The June 4, 1996 notice indicated that, if the full premium was not paid by the due date of June 13, 1996, the policy would expire on June 18, 1996. Notwithstanding this notice, Bosley failed to remit payment of any additional amount by the given deadline. Instead, Bosley made a premium payment of $97[7] to Safeway on July 1, 1996, at which time he signed an affidavit acknowledging that his policy had expired on June 18, 1996, and the new policy would go into effect on July 1, 1996, at the earliest.
In urging its motion for summary judgment, Clarendon submitted that Bosley remitted $57 for one calendar month of insurance coverage as required by the May 15, 1996 renewal premium notice. It argued that if this amount was insufficient to cover the cost for the policy for the one-month term for June 1 to July 1, 1996, Safeway was required by LSA-R.S. 22:636.1 to send a notice of cancellation for nonpayment of premium to properly effect a cancellation of the policy. On the other hand, Safeway contended that the change in the policy to add a second vehicle at Bosley's request, after the preparation and mailing of the May 15, 1996 renewal premium notice, caused an increase in the insurance premium. According to Safeway, under the altered policy terms, an increased premium was owed to obtain coverage on both vehicles through July 1, 1996. In lieu of payment of the full premium owed, the expiration date was adjusted to June 18, 1996, and Safeway argued that LSA-R.S. 22:636.1 was inapplicable and a notice of cancellation was unnecessary since the policy expired on its *881 own terms. In light of the contentions of the parties, the propriety of the trial court's granting of summary judgment in favor of Safeway depends on whether this case involves a cancellation or a renewal of Bosley's policy.
Cancellation of automobile liability insurance policies is addressed in LSA-R.S. 22:636.1(B)(1), which in pertinent part provides:
A notice of cancellation of a policy shall be effective only if it is based on one or more of the following reasons:
(a) Nonpayment of premium.
LSA-R.S. 22:636.1(D)(1) also addresses cancellation and provides:
No notice of cancellation of a policy to which Subsection B or C of this Section applies shall be effective unless mailed by certified mail or delivered by the insurer to the named insured at least thirty days prior to the effective date of cancellation; however, when cancellation is for nonpayment of premium at least ten days notice of cancellation accompanied by the reason therefor shall be given. In the event of nonpayment of premiums for a binder, a ten day notice of cancellation shall be required before the cancellation shall be effective. Notice of cancellation for nonpayment of premiums shall not be required to be sent by certified mail. Unless the reason accompanies the notice of cancellation, the notice of cancellation shall state or be accompanied by a statement that upon written request of the named insured, mailed or delivered to the insurer within six months after the effective date of cancellation, the insurer will specify the reason for such cancellation. This Subsection shall not apply to nonrenewal.
Cancellation implies that a policy is being disrupted for some reason and terminated prior to its anticipated termination date. Adamson v. State Farm Mutual Automobile Insurance Co., 95-2450 (La.App. 1st Cir.6/28/96), 676 So.2d 227, 232. When initiated by the insurer, cancellation requires that the notice prescribed by the statute be given. Adamson v. State Farm Mutual Automobile Insurance Co., 676 So.2d at 232.
On the other hand, an insurer's obligations regarding renewal[8] of a policy are addressed in LSA-R.S. 22:636.1(E)(1), which in pertinent part provides:
No insurer shall fail to renew a policy unless it shall mail or deliver to the named insured, at the address shown in the policy, at least twenty days advance notice of its intention not to renew. This Subsection shall not apply:
. . . .
(b) in case of nonpayment of premium
. . . .
Critical to a resolution of the issue of coverage in this case is a determination of the authority of Safeway to unilaterally change the expiration date of the policy from July 1, 1996, to June 18, 1996. Such authority seemingly would be derived from the terms of the insurance policy that is the subject of this controversy. Because the policy is not a part of the record, it is impossible to determine whether Safeway had such authority. Thus, we are unable to conclude as a matter of law whether Safeway provided automobile liability insurance coverage on June 30, 1996, the date of the accident. Accordingly, summary judgment was improper in this case based on the record before us.

Decree
For the foregoing reasons, the trial court's judgment granting Safeway's motion for summary judgment and dismissing Clarendon's third party claims against Safeway is reversed. Costs of this appeal *882 are assessed to Safeway Insurance Company.
REVERSED.
NOTES
[1] LSA-R.S. 22:636.1 includes provisions regarding the cancellation of automobile liability insurance policies.
[2] A summary judgment as to fewer than all the claims or parties must be designated as final before an appeal can be taken. LSA-C.C.P. art. 1915(B). When this judgment, as amended, was signed, the designation of a judgment as final could be made by the parties, as was done in this case, or by the judge. For matters filed on or after January 1, 2000, only the court may make such a designation after an express determination that there is no just reason for delay. 1999 La. Acts, No. 1263, § 1.
[3] This affidavit was attached as an exhibit to Safeway's motion for summary judgment.
[4] We note that nothing in the record indicates that Bosley was informed by Safeway prior to June 1, 1996, regarding the cost of purchasing one month of coverage on both vehicles or that Safeway ever sent Bosley a revised premium notice prior to that date.
[5] This court notes that Safeway apparently utilized a per day cost of the desired coverage in arriving at June 18, 1996, as an expiration date. When considering that the cost of one full month's coverage was $98, Bosley's prepayment of $57 was sufficient to purchase at most 18 days of coverage.
[6] The balance owed on the increased premium amounted to $41 ($98$57).
[7] This payment was apparently made in response to a separate renewal premium notice, also processed on June 4, 1996, that demanded payment of $97 for one month of coverage, $188 for two months, and $279 for three months. The affidavit of Safeway's underwriting supervisor explained that this notice was a regeneration rather than a copy of the actual notice that had been sent to Bosley.
[8] "Renewal" or "to renew" means the issuance and delivery by an insurer of a policy replacing at the end of the policy period a policy previously issued and delivered by the same insurer, or the issuance and delivery of a certificate or notice extending the term of a policy beyond its policy period or term. LSA-R.S. 22:636.1(A)(5).