793 So.2d 473 (2001)
Harry TOWNSEND, individually and as a Representative of all persons similarly situated, Plaintiff-Appellant,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellee.
No. 34,901-CA.
Court of Appeal of Louisiana, Second Circuit.
August 22, 2001.
*474 Sam N. Gregorio, Shreveport, LeBlanc & Waddell By Jody E. Anderman, Baton Rouge, Counsel for Appellant.
Stone, Pigman, Walther, Wittmann & Hutchinson By Wayne J. Lee, New Orleans, Casten & Pearce By Marshall R. Pearce, Shreveport, Counsel for Appellee.
Before STEWART, GASKINS and DREW, JJ.
STEWART, J.
At issue in this appeal from a summary judgment is whether an automobile insurance policy issued by State Farm Mutual Automobile Insurance Company ("State Farm"), allows the insured to recover the "diminished value" of the automobile, in addition to the cost to repair, in first-party claims when adequate repairs are made. The trial court concluded that the State Farm policy does not provide for recovery of diminished value in first-party claims and granted summary judgment in its favor. A summary judgment motion filed by the plaintiff, Harry Townsend, was denied. After conducting a de novo review of the *475 record, we affirm the trial court's judgment.

FACTS
Harry Townsend owned a Plymouth Voyager van which was damaged in an accident on November 2, 1998. At the time of the accident, the van was insured under a State Farm policy which provided comprehensive/collision coverage.[1] Pursuant to the applicable policy provisions, State Farm paid $4,000 to repair the vehicle. Townsend then filed a class action suit for breach of contract on behalf of himself and similarly situated State Farm policyholders. He claimed that State Farm was obligated to pay the diminished value in addition to the repair costsdiminished value being the difference between the pre-damage value of a vehicle and its value after being properly repaired.
State Farm and Townsend filed cross motions for summary judgment on the issue of whether the policy provides coverage for diminished value claims. Referring to the existence of genuine issues of material fact, the trial court initially denied both motions. The parties renewed their respective motions and filed a joint motion to reconsider. They stipulated that there was no issue of fact with regard to the interpretation of the policy language and asked the court to resolve the threshold question of diminished value coverage before the litigation proceeded further.
On September 6, 2000, the trial court rendered a final judgment granting State Farm's motion for summary judgment and denying Townsend's motion. In a written ruling, the trial court referred to Section IV of the policy which limits State Farm's liability to the lower of the actual cash value or the cost of repair or replacement. Since State Farm paid the cost to repair Townsend's vehicle, the trial court determined that resolution of whether diminished value is recoverable hinged on the meaning of "repair." The trial court interpreted the term "repair" pursuant to its generally prevailing meaning, which the court determined to be the "physical fixing of a thing that is broken." The trial court rejected Townsend's argument that repair, as used in the policy, expresses the same obligations as those imposed upon a tortfeasor by La. C.C. art. 2315. Applying the basic principles applicable to contract interpretation, the trial court found the language of the policy to be clear and unambiguous in limiting State Farm's liability to repair the vehicle by restoring it to a useful condition or a condition as near as possible to its pre-accident physical condition. The trial court concluded that the policy did not contemplate restoration of the former value of the automobile. Townsend appealed.

DISCUSSION

Applicable Law
The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by law; the procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966(A)(2); Crocker v. Roach, 33,507 (La. App.2d Cir.8/23/00), 766 So.2d 672, review denied, 00-2684 (La.11/17/00), 774 So.2d 983. Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). Appellate review of a summary judgment is de novo, utilizing the same criteria that guide the *476 trial court's grant of summary judgment. Magnon v. Collins, 98-2822 (La.7/7/99), 739 So.2d 191; Crocker v. Roach, supra.
Interpretation of an insurance contract presents a legal question which usually can be resolved by means of a motion for summary judgment. Crocker v. Roach, supra; State Farm Mutual Automobile Insurance Company v. Casualty Reciprocal Exchange, 600 So.2d 106 (La. App. 2d Cir.1992). When a contact can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law and summary judgment is appropriate. Peterson v. Schimek, 98-1712 (La.3/02/99), 729 So.2d 1024; Brown v. Drillers, Inc., 93-1019 (La.1/14/94), 630 So.2d 741. However, summary judgment declaring a lack of coverage under an insurance policy may not be rendered unless there is no reasonable interpretation of the policy, when applied to the undisputed material facts shown by the evidence supporting the motion, under which coverage could be afforded. Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180; Westerfield v. LaFleur, 493 So.2d 600 (La. 1986).
An insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Louisiana Civil Code. Peterson v. Schimek, supra; Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co., 93-0911(La.1/14/94), 630 So.2d 759; Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180; Tippett v. Padre Refining Co., 34,140 (La. App.2d Cir.11/15/00), 771 So.2d 300, review denied, 00-3443 (La.4/12/01), 789 So.2d 589, recon. denied, 00-3443 (La.5/25/01), 792 So.2d 746; Crocker v. Roach, supra. The parties intent, as reflected by the words of the policy, determines the extent of coverage. Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co., supra; Reynolds v. Select Properties, Ltd., supra. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. C.C. art. 2046. In such cases, the insurance contract must be enforced as written. Peterson v. Schimek, supra; Central La. Elec. Co. v. Westinghouse Elec. Corp., 579 So.2d 981 (La.1991). Words and phrases used in a policy are to be construed using their plain, ordinary, and generally prevailing meaning, unless the words have acquired a technical meaning. La. C.C. art. 2047; Reynolds v. Select Properties, Ltd., supra.
An insurance contract is construed as a whole, and each provision must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. La. C.C. art. 2050. See also La. R.S. 22:654.[2] However, an insurance policy should not be interpreted in an unreasonable or strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Valentine v. Bonneville Ins. Co., 96-1382 (La.3/17/97), 691 So.2d 665. The rules of construction do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of new contract when the terms express with sufficient clearness the parties' intent. Peterson v. Schimek, *477 supra; Reynolds v. Select Properties, Ltd., supra. The fact that one party may create a dispute about the meaning of a contractual provision does not render the provision ambiguous. Slocum-Stevens Ins. Agency, Inc. v. International Risk Consultants, Inc., 27,353 (La.App.2d Cir.12/11/95), 666 So.2d 352, review denied, 96-0102 (La.3/8/96), 669 So.2d 399. Moreover, the mere fact that an insurance policy is a complex instrument does not render it ambiguous. Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co., supra. The determination of whether a contract is clear or ambiguous is a question of law. Id.
Finally, it is well settled that insurance companies may limit coverage in any manner they desire, so long as the limitations do not conflict with statutory provisions or public policy. Reynolds v. Select Properties, Ltd., supra; Oceanonics, Inc. v. Petroleum Distributing Co., 292 So.2d 190 (La.1974); Crocker v. Roach, supra. Any provision which seeks to narrow an insurer's obligation should be strictly construed against the insurer. However, this does not empower a court to strain otherwise clear language or depart from the accepted meaning of words in order to create an ambiguity where none in fact exists. Tippett v. Padre Refining Co., supra.

Analysis of the Policy Provisions
Utilizing the aforementioned rules of interpretation, we turn now to examine the particular policy provisions at issue and to determine whether, as a matter of law, the policy obligates the insurer to pay for the diminished value of an automobile, after payment of repairs, when a first party claim is satisfied. This issue is one of first impression in the appellate courts of this state.
The claim from which this controversy arises was filed under the collision coverage provided by the policy. The section of the policy labeled "COLLISIONCOVERAGE G" states that the insurer "will pay for loss to your car caused by collision but only for the amount of each such loss in excess of the deductible amount." Loss, as the term is used above, is defined in the policy as "each direct and accidental loss of or damage to" the insured's car and other items listed therein. Loss is not otherwise defined in the policy.
Townsend argues that loss should be defined to include any loss to an insured vehicle, including loss of value caused by having been damaged. He further argues that diminished value is a direct loss to an insured vehicle. We do not dispute these assertions; however, we do not find that they resolve the issue at hand.
To determine whether State Farm is obligated to pay for diminished value of an automobile, the provisions requiring the insurer to pay for "loss to your car" must be read in conjunction with other policy provisions, particularly the provisions limiting the insurer's liability. It is the limits of liability provision that defines the scope of coverage under a policy. Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co., supra. Additionally, coverage is defined as the amount and extent of risk contractually assumed by the insurer. Id. (See footnote 13.) While State Farm may be obligated under the terms of the policy to pay for loss to the insured car, its liability for such loss is contractually limited. The limit of liability provision for comprehensive and collision coverage under the State Farm policy provides:
The limit of our liability for loss to property or any part of it is the lower of:
1. the actual cash value; or
2. the cost of repair or replacement.

*478 Actual cash value is determined by the market value, age and condition at the time the loss occurred. Any deductible amount that applies is then subtracted.
The cost of repair or replacement is based upon one of the following:
1. the cost of repair or replacement agreed upon by you and us;
2. a competitive bid approved by us; or
3. an estimate written based upon the prevailing competitive price. The prevailing competitive price means prices charged by a majority of the repair market in the area where the car is to be repaired....
This provision limits State Farm's liability for loss to the lower of either the actual cash value of the automobile or the cost of repair or replacement of the automobile. State Farm paid the cost of repair in this instance. Therefore, the cost of repair was obviously lower than the actual value of Townsend's damaged van.
Townsend has not alleged that the amount paid by State Farm was insufficient to cover the cost of the repairs, nor has he alleged that the repairs to his van were substandard or improperly performed. He has alleged that State Farm's obligation to pay the cost of repair includes the obligation to pay for any diminution in value of the van resulting from it having been damaged. We agree with the trial court that a determination of whether State Farm is contractually obligated to pay diminution in value when it pays the cost of repair to a damaged vehicle hinges upon the meaning of "repair" as used in the policy.
Townsend argues that repair as used in the State Farm policy means more than physical repair of damage to an automobile. Referring to La. C.C. art. 2315, Townsend asserts that repair as used in the policy requires the insurer to make the insured whole by not only correcting physical damage to the automobile but by also paying the diminution in value of the automobile in order to place the insured in the same position he was in prior to the occurrence of the damage or loss. Moreover, Townsend asserts that repair is a term of art requiring restoration of the vehicle to its pre-damage condition and value.
While we find the arguments asserted in support of Townsend's position to be creative and well thought out, we do not find his position regarding the meaning of repair to be supported by the clear, concise, and unambiguous policy language. We do not find any support for the position that the term "repair" is a term of art that has a particular meaning, other than its generally prevailing meaning. As defined by Merriam Webster's Collegiate Dictionary, Tenth Edition, the verb repair means "to restore by replacing a part or putting together what is torn or broken." As defined by Webster's College Dictionary, repair means "to restore to a good or sound condition after decay or damage; mend." Jurisprudence also indicates that the generally prevailing meaning of "repair" is "to fix anything that is broken." See South Central Bell Telephone Co. v. Barthelemy, 94-0499 (La.10/17/94), 643 So.2d 1240; Intracoastal Pipe Serv., Co. v. Assumption Parish, 558 So.2d 1296 (La. App. 1st Cir.1990), writ granted in part, denied in part, 563 So.2d 863 (La.1990). Applying the generally prevailing meaning of repair to the limit of liability provisions, it is clear that State Farm's obligation under the policy when it repairs a vehicle is to fix, restore, or mend physical damage. The generally prevailing meaning of repair does not encompass restoration of value, an item of damage that cannot be physically repaired.
*479 Our view is supported by the policy provisions detailing what the cost of repair or replacement is based upon. These provisions, which are cited above, refer to either an amount agreed upon by the insured and insurer, a competitive bid, or an estimate based upon the prevailing competitive price. The prevailing competitive price is defined in the policy as "prices charged by a majority of the repair market...." The policy further provides that the insurer will "include in the estimate parts sufficient to restore the vehicle to its pre-loss condition" and that "such parts may include either parts furnished by the vehicle's manufacturer or parts from other sources...." It is evident that the policy provisions for determining the cost of repair or replacement contemplate a physical restoration of the damaged vehicle. Value is contemplated only when the actual cash value of the vehicle is lower than the cost of repair. In such a case, the policy provides that the actual cash value is "determined by the market value, age and condition at the time the loss occurred." As indicated by this language, State Farm knew to use the term "value" as a measure of their liability when such was intended.
In light of our discussion of the policy terms, it is evident that we disagree with Townsend's proposition that repair as used in the contract has as broad an application as in La. C.C. art. 2315.[3] This article sets forth a basic tort principle requiring a defendant-tortfeasor to indemnify a plaintiff by putting him in a position he would have been in if the injury or damage had not occurred. Coleman v. Victor, 326 So.2d 344 (La.1976). When property is damaged through fault of another, the measure of damages is the cost of restoring the property to its former condition where the thing damaged can be adequately repaired. Id. The law has evolved to allow an additional measure of damages for diminution of value by virtue of the vehicle having been involved in an accident, where proof of diminished value can be made. Davies v. Automotive Cas. Ins., 26,112 (La.App.2d Cir.12/7/94), 647 So.2d 419. It is important to note that cases recognizing diminished value as an item of damage also involve third party liability claims based on the basic tort principle set forth in La. C.C. art. 2315. Orillac v. Solomon, 33,701 (La.App.2d Cir.8/23/00), 765 So.2d 1185; Smith v. Midland Risk Ins. Co., 29,793 (La.App.2d Cir.9/24/97), 699 So.2d 1192; Davies v. Automotive Cas. Ins., supra; Romco, Inc. v. Broussard, 528 So.2d 231 (La.App. 3d Cir. 1988), writ denied, 533 So.2d 356 (La. 1988); and Giles Lafayette, Inc. v. State Farm Mut. Auto. Ins. Co., 467 So.2d 1309 (La.App. 3d Cir.1985), writ not considered, 472 So.2d 911 (La.1985). Allowing damages for diminution in value, when such damages are established, fulfills the tortfeasor's obligation to "make whole" his victim.
In contrast, the obligation between State Farm and Townsend is contractual. State Farm's obligation to indemnify Townsend when a first-party claim is submitted due to a collision is limited by the terms of the contract. It is not governed by tort principles. Bootstrapping the standards for measuring damages when property is damaged through the fault of another to the contractual coverage provided by an insurer for first-party collision claims would result in a new contract, one enlarged beyond what is reasonably contemplated by the clear terms set forth therein, and would ignore the principle that insurance companies may limit coverage so long as *480 such limitations do not conflict with statutory provisions or public policy.
We have also reviewed the documentation submitted in support of the motions for summary judgment, including the numerous cases from other states that have addressed this issue and reached differing conclusions.[4] However, the words of the contract at issue here are clear, explicit, and lead to no absurd consequences such that determination of the parties intent may be construed from the four corners of the instrument without resort to extrinsic evidence.
Townsend also relies on Attorney General Opinion 99-183, rendered August 26, 1999, for support for his position that diminished value is payable under the terms of the State Farm policy when a first party claim is made under the collision coverage. This opinion is not persuasive. It does not address any specific insurance contract language, nor does it purport to address the payment of diminished value in contractual terms. The opinion purports, in part, to answer the following inquiry:
1. Is diminished value payable to first party claimants after repairs have been made to motor vehicles?
The specific answer given states as follows:
(D)iminished value will be paid to the person who owns the vehicle that has been damaged unless this, claim has been subrogated to the insurance company or the defendant has taken possession of the damaged vehicle. Diminished value is not always payable. It depends on the facts and circumstances of each case.
We do not find this answer to be dispositive of or relevant to the issue on appeal. Finally, the opinion includes no authority for the position that diminished value is payable in first party insurance claims.
Having determined that the language of the policy is clear and unambiguous, we now hold that where an insurer has paid for full and adequate physical repair to a damaged vehicle when a first party claim is made, its obligation under the policy is satisfied and it is not required to pay for any reduction in market value of the vehicle. The very essence of a diminished value claim stems from the fact that such damage, if any, is not subject to repair. The policy provision requiring the insurer to pay the cost of repair or replacement limits the insurer's liability to the cost of restoring the vehicle to substantially the same physical condition as before the accident so that it is as fit for operation as it was prior to the occurrence of the damage. Any other interpretation would pervert the plain meaning of the limit of liability provision, which includes no reference to diminished *481 value or restoration of value and no promise to make the insurer whole.

CONCLUSION
For the reasons mentioned, the judgment of the trial court is affirmed at appellant's cost.
AFFIRMED.
NOTES
[1] Policy number 6110709-A23-18B.
[2] La. R.S. 22:654 provides:

Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any rider, endorsement, or application attached to or made a part of the policy.
[3] La. C.C. art. 2315 states, "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."
[4] Cases interpreting similar policy language to include payment of diminished value include: Dunmire Motor Co. v. Oregon Mutual Fire Ins. Co., 166 Or. 690, 114 P.2d 1005 (1941); Smith v. American Fire & Casualty Co., 242 S.W.2d 448 (Tex.App.1951); American Standard County Mut. Ins. Co. v. Barbee, 262 S.W.2d 122 (Tex.App.1953); Campbell v. Calvert Fire Ins. Co., 234 S.C. 583, 109 S.E.2d 572 (1959); Arch Roberts & Co. v. Auto-Owners Ins. Co., 305 So.2d 882 (Fla.App.1974); and Riley S. Senter v. Tennessee Farmers Mutual Ins. Co., 702 S.W.2d 175 (Tenn.App. 1985).

Cases interpreting similar policy language to exclude payment of diminished value include: Bickel v. Nationwide Mutual Ins. Co., 206 Va. 419, 143 S.E.2d 903 (Va.1965); General Accident Fire & Life Assurance Corp. v. Judd, 400 S.W.2d 685 (Kty.App.1966); James Ray v. Farmers Ins. Exchange, 200 Cal.App.3d 1411, 246 Cal. Rptr. 593 (1988); Johnson v. State Farm Mutual Automobile Ins. Co., 157 Ariz. 1, 754 P.2d 330 (1988); Carlton v. Trinity Universal Ins. Co., 32 S.W.3d 454 (Tx.App. 2000); O'Brien v. Progressive Northern Insurance Company, 2000 WL 33113833 (Del.Super.2000); and Siegle v. Progressive Consumers Ins. Co., 788 So.2d 355 (Fla.App.2001).